**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANTELLET BROOKS, | : | CIVIL NO: **3:CV-13-00937** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

**I.     PROCEDURAL HISTORY.**

Plaintiff, Shantellet Brooks, filed, through counsel, a Complaint on April 12, 2013, appealing the final decision denying her applications for Social Security Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§401-433, 1381-1383f. (Doc. 1).     On the same date Plaintiff filed a motion to proceed in forma pauperis, which was later granted by the Court. (Docs. 2, 3).    This Court has jurisdiction over this case pursuant to 42 U.S.C. §405(g) and 42 U.S.C. § 1383(c)(3).

On June 12, 2013, the Commissioner filed an Answer.  (Doc. 8).  The Commissioner filed the a copy of the administrative record the following day.  (Doc. 9).  After being granted an extension of time, Plaintiff filed a Brief in support of her Complaint.  (Doc. 12).   On November 21, 2013, the Commissioner filed her Brief.  (Doc. 15).  Plaintiff did not file a Reply.

This appeal is now ripe for disposition.[1]

Plaintiff, born on February 22, 1982, protectively filed applications for DIB and SSI,  on

September 9, 2009, alleging disability due to mental impairment.[2]  (TR 206-16).  Specifically,

Plaintiff was diagnosed with Bipolar II Disorder.  Plaintiff  reported that she became unable to

work due to this condition on August 31, 2009.  (*Id.*).  Plaintiff's DIB and SSI applications were

initially denied by the Agency on May 5, 2010.  (TR 101-10).  The Plaintiff filed a written

request for a hearing.  (TR 130-31).  On August 25, 2011, a hearing was held before

Administrative Law Judge ("ALJ") Sharon Zanotto.  (TR 23-87).  Plaintiff, who at the time was

29 years old, testified at the hearing and impartial vocational expert ("VE") Brian Bierley also

testified at the hearing.  (*Id.*).  Following the hearing, the evidentiary record was held open to

provide Plaintiff with the opportunity to submit some verification of her earnings as a part-time

exotic dancer during the relevant period.  (TR 86).  On October 4, 2011, the ALJ issued a

decision denying Plaintiff's applications for  benefits and found that Plaintiff was not under a

disability within the meaning of the Act from August 31, 2009, alleged disability onset date,

through October 4, 2011, the date of the ALJ's decision. (TR 21-22).

The Plaintiff sought review of the ALJ's decision by the Appeals Council.  On March 13,

---

[1]Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  L.R. 83.40.1.

[2]It appears that Plaintiff may have filed prior applications for benefits.  The administrative record contains two notices of decision denying applications for benefits which pre-date Plaintiff's applications.  (TR 90-99).  However, no prior application for benefits was included in the administrative record.

2013, the Appeals Council denied Plaintiff's request for review.  (TR 1-5).  For the reasons set forth below, we recommend that the Commissioner's final decision denying Plaintiff's applications for benefits be vacated and remanded for further proceedings.

## II.    STANDARD OF REVIEW.

Resolution of the instant social security appeal involves an informed  consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court. When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)*; Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999); *Johnson*, 529 F.3d at 200.   It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.   *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993).   In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Furthermore, in determining if the ALJ's decision is supported by substantial evidence

the court may not parse the record but rather must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## III.    DISABILITY EVALUATION PROCESS.

At the outset, it is the responsibility of the ALJ in the first instance to determine whether a Plaintiff has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).  In order to be eligible to receive DIB under Title II of the Act, a Plaintiff must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. §404.131(a).  SSI under Title XVI of the Act, however, is a need-based program, and therefore  insured status is irrelevant in determining an individual's eligibility.

Furthermore:

[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B).

-4-

In determining whether an individual is "disabled" as defined by the Act, the ALJ must proceed through a five-step evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must sequentially determine: (1) whether Plaintiff is engaged in substantial gainful activity; (2) whether Plaintiff has a severe impairment; (3) whether Plaintiff's impairment meets or equals a listed impairment; (4) whether Plaintiff's impairment prevents the claimant from doing past relevant work; and (5) whether Plaintiff's impairment prevents the claimant from doing any other work. *Id.*

Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm. of SSA*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

This disability determination involves shifting burdens of proof. The initial burden rests with Plaintiff to demonstrate that she is unable to engage in past relevant work. If Plaintiff satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requirements.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Here, the ALJ found that Plaintiff was under the retirement age, and met the insured status requirements of the Social Security Act through December 31, 2010.  Then, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act from August 31, 2009, her alleged disability onset date, through October 4, 2011, the date of the ALJ's decision.  (TR 12-22).

At step one, the ALJ noted that Plaintiff may have engaged in substantial gainful work activity after the alleged onset date of her disability.  The ALJ recognized that Plaintiff worked as an exotic dancer from August 2009 to November or December 2010.  (TR 33-35).  Further, Plaintiff was unable to provide an accurate verification of her earned income from this position.  (TR 38).  After the ALJ hearing, Plaintiff submitted additional evidence to the ALJ, which included a letter from a former co-worker.  (TR 335).  Plaintiff's former co-worker, also a

dancer, reported that she earned roughly $400 per night, but opined that Plaintiff earned less because she was not very aggressive with customers.  (*Id*).  In her decision, the ALJ proceeded to step two of the sequential evaluation process despite her conclusion that Plaintiff "may have" engaged in substantial gainful activity after her alleged onset date. (TR 14*)*.

At step two, the ALJ concluded that  Plaintiff's impairment due to Bipolar II Disorder was severe.  (*Id*.).

At step three, the ALJ found that Plaintiff's Bipolar II Disorder did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 15-20). The ALJ considered Listing 12.04 for Plaintiff's diagnosed mental impairment of Bipolar II Disorder.  (TR 15).

Before moving on to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to "moderate limitations in using decision making and judgment, adjusting to work setting changes, and interacting with supervisors, co-workers and the public."  (TR 17).

At step four, the ALJ found that, based on testimony by a VE, Plaintiff was unable to perform her past relevant work, as a supply clerk or loan clerk.  (TR 20, 82).

At step five, the ALJ found that, based on testimony by a VE and considering the Plaintiff's age (27 at date of alleged disability onset), high school level of education, work experience, and RFC, there were significant numbers of jobs in the national economy which the Plaintiff could perform, such as housekeeping cleaner, conveyor line bakery worker, and bottling line attendant. (TR 21, 82-83).

## IV.     BACKGROUND.

Plaintiff was born on February 22, 1982, and was 27 years old at the alleged disability onset date, which classifies her as a younger individual under the Social Security Regulations. *See* 20 C.F.R. §§ 404.1563, 416.963; (TR 32).  Plaintiff lives in an apartment with her three young children; but had an adult roommate from October 2010 to February 2010.  (TR 43, 48).  Plaintiff has a high school education, and is able to communicate in English.  Plaintiff served in the U.S. Military from 2001 to 2003, when she was honorably discharged.  (TR 44).  She testified that she attended classes to become a medical assistant, but did not complete the program.  (TR 43).

Plaintiff testified that she stopped working as a customer service representative for a collections agency in August 2009 because she "couldn't handle getting yelled at or screamed at" by customers over the phone.  (TR 34).  Shortly thereafter, Plaintiff began working part-time as an exotic dancer at various establishments in Pennsylvania, Maryland, and West Virginia.  (TR 38-39).  She continued to dance until November or December 2010.  (TR 35).  Plaintiff testified that she ended her dance career, in large part, because the erratic schedule and frequent travel made it difficult to arrange child care, and because she often experienced flashbacks, anxiety attacks, and auditory hallucinations during her performances.  (TR 52-54, 78).  Plaintiff testified that she had no record of her earnings from these performances, and as such the ALJ was unable to conclude whether the income from her work as a dancer rose to the level of substantial gainful activity.  (TR 37-39).  In January 2011 she enrolled full-time in a practical nursing program at a local community college.  (TR 37-39, 44).

Plaintiff testified that she received cash assistance from August 2009 through July 2011. (TR 48).  She voluntarily "cut off" her cash assistance when she enrolled in community college and began to receive military assistance though the GI Bill.  (TR 48-49).  Plaintiff received food stamps, and had a medical card from August 2009 through the date of her hearing.  (*Id.*).

She testified that she experienced anywhere from three to four anxiety attacks per week to two attacks per day, each lasting up to one hour in duration.  (TR 74, 77).  Plaintiff reported that when she experienced periods of depression she lacked the motivation to attend to her own hygiene and personal care needs.  In a function report, Plaintiff acknowledged that she had no difficulty bathing, fixing her hair, shaving or using the restroom.  (TR 300).  Her mother reported that Plaintiff had no difficulties meeting her own personal care needs.  (TR 308). Plaintiff testified that she was able to care for her three young children despite her impairment. (TR 45-47). Plaintiff reported that she was able to perform a range of household chores such as washing dishes, vacuuming, ironing, and laundry.  (TR 301).  She asserted that she was able to drive, and prepare meals for herself and her children.  (TR 301-02).  Plaintiff also reported that she was able to shop for groceries and manage her own finances.  (TR 302).

Plaintiff testified that she experienced anxiety in crowded environments, or when she felt isolated or stressed.  (TR 54, 57, 61).  She stated that people aggravated her, and that she had a short temper.  (TR 304).  However, Plaintiff also reported that she was able to go out alone, attended church on Sundays, and spoke to her mother daily over the telephone.  (TR 50, 302).   Her mother reported that Plaintiff took her children to birthday parties and school functions.  (TR 311).  Plaintiff stated that she was never fired from a job due to an inability to

get along with others, and that she was able to tolerate authority figures.  (TR 304-05).

Plaintiff alleged that she had difficulty remembering, completing tasks, concentrating, understanding, and following instructions.  (TR 304).  Plaintiff reported that she lacked motivation to finish household chores and run errands.  (TR 300).  Her mother stated that she occasionally needed to be reminded to take her medications (TR 309).  Plaintiff asserted that she handled changes in routine poorly.  (TR 305).  She reported that her hobbies included reading, writing, poetry, watching television, and playing with her children.  (TR 303).

Plaintiff's medical records reflect a history of physical, emotional, and sexual abuse and multiple psychiatric hospitalizations prior to her alleged onset date, including two documented suicide attempts.  She has not had any episodes of decompensation during the relevant period. Plaintiff's medical records reflect that, during the relevant period, she sought mental health treatment several  different sources.   From September 2009 through June 2011, Plaintiff was treated at Edgewater Psychiatric Center where she was treated by Jyoth Tadavarthy, M.D.,and a certified physician's assistant ("Edgewater PA-C").  (TR 605-13, 667-75, 689-700, 731-40). From August 2009 through December 2009, Plaintiff attended counseling sessions with licensed clinical social worker (LCSW) Julia Tilley at Lawrence Counseling.  (TR 594-603).

## V.    DISCUSSION.

Plaintiff argues that substantial evidence does not support the ALJ's decision denying her claims for DIB and SSI.  "[The District] Court's review is plenary with respect to all questions of law."  *Hansford v. Astrue*, 805 F.Supp.2d 140, 143 (W.D.Pa. 2011)(citation omitted).  "With respect to factual issues, judicial review is limited to determining whether the Commissioner's

decision is 'supported by substantial evidence.'" *Id.*(citations omitted).  "The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record." *Id.*(citation omitted).   Rather, the Court must review the findings of fact and conclusions of the ALJ to determine whether they are supported by substantial evidence.  If the ALJ's findings of fact are supported by substantial evidence, they "shall be conclusive." *Id.*(citations omitted).  Thus, the Court applies a "deferential standard of review."  *Id.*(citations omitted).

### A.       The ALJ Properly Weighed the Medical Opinions of Record.

Plaintiff argues that the ALJ improperly discounted, and in some cases failed to evaluate, medical opinions by the following treating sources: LCSW Julia A. Tilley;[3] Dr. Jyoth Tadavarthy; and the Edgewater PA-C.  She asserts that the medical opinions by her treating sources are entitled to "significant if not controlling" weight because they are supported by the medical opinion of consultative examiner Dr. Crosson, and consistent with the evidentiary record as a whole.  (Doc. 12 pp. 15-24).  In response, the Commissioner asserts that the ALJ properly discounted this medical evidence. (Doc. 15 pp. 23).

It is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642

---

[3] In her brief, Plaintiff erroneously identified Dr. Miller as a treating physician at Lawrence Counseling.  Plaintiff's medical records reflect that Dr. Miller is a treating physician at Hershey Medical Center and did not provide Plaintiff with any significant mental health treatment.  The GAF scores Plaintiff alleges were improperly discounted were actually assessed by LCSW Tilley.  Accordingly, we will address Plaintiff's argument as it applies to LCSW Tilley.

F.2d at 704.  This principle applies with particular force to the testimony of a treating physician, testimony that is to be accorded great weight by the ALJ.  In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones.  In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield v.  Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

Furthermore, when assessing competing views of treating and non-treating physicians, the ALJ and this court are cautioned that:

> [A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. *Ferguson,*765 F.2d at 37 (1985). When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir.1983). Treating physicians' reports should be

accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.) An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985).

*Plummer*, 186 F.3d at 429.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), and 416.927(c)(2). When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. *See* C.F.R. §§ 404.1527, 416.927. Non-controlling medical opinions by treating sources are also accorded more or less weight based on the extent to which the medical source presents relevant evidence in support of the opinion, and based upon the extent to which it is consistent with the record as a whole. *Id.*

Given this recognition of the great weight that should attach to the professional judgment of treating physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability. Moreover, when an ALJ fails to adequately explain why a treating physician's medical assessment has been discounted, a remand for further development of the factual record is proper. *See e.g., Burnett*, 220 F.3d at 119 (failure to adequately discuss competing

medical evidence compels remand of ALJ decision); *Schaudeck*, 181 F.3d at 433; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir. 1989); *Belotserkovskaya v. Barnhart*, 342 F.Supp.2d 335, 338 (E.D. Pa. 2004). Thus, as one court has aptly observed:

> "An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993) (internal quotation marks, citations and indication of alteration omitted). Where the findings are those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Id. (citations omitted) An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, *see Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, *see Mason*, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, *see Id.* at 1067. An ALJ may not, however, reject medical determinations by substituting [her] own medical judgments. *See Frankenfield*, 861 F.2d at 408.

*Terwilliger v. Chater*, 945 F.Supp. 836, 842-3 (E.D.Pa.1996).

### 1. The opinions by LCSW Tilley and the Edgewater PA-C are not entitled to Controlling Weight

At the outset we note that Plaintiff's argument that the medical opinions of LCSW Tilley and the Edgewater PA-C are entitled to *controlling weight* lacks merit. As discussed above, in certain circumstances a *treating source* may be accorded controlling weight. Pursuant to the Social Security Regulations a *treating source* is any "acceptable medical source" who provides a Plaintiff with medical treatment or evaluation or had an ongoing treatment relationship with a Plaintiff. 20 C.F.R. §§ 404.1502, 416.902. Acceptable medical sources include: licensed physicians (medical or osteopathic doctors); licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech pathologists. 20 C.F.R. §§ 404.1513(a),

416.913(a).  Moreover, SSR 06-3p recognized that neither LCSWs nor PA-Cs are considered "acceptable medical sources" as defined by the Social Security Regulations.   Only acceptable medical sources can be considered treating sources whose opinions may be entitled to controlling weight.   SSR 06-3p.

Opinions by medical sources who are not "acceptable medical sources" are evaluated as "other evidence" under the Social Security Regulations.  *Id.*  SSR 06-3p states that "[o]pinions from 'other medical sources' may reflect the sources judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources.' including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  Although the Social Security Regulations related to the evaluation of medical opinion evidence do not explicitly apply to the evaluation of medical opinions from "other sources" such evidence should be weighed based on the same factors used to evaluate non-controlling acceptable medical sources.   SSR 06-3p; *See also* 20 C.F.R. §§ 404.1527, 416.927.  Therefore, the non-controlling weight to which evidence from medical sources who are not "acceptable medical sources" is entitled varies according to the particular facts of the case.  Our review of the non-controlling weight accorded to the medical opinions by LCSW Tilley and the Edgewater PA-C is discussed below.

### 2.   The ALJ properly discounted the GAF scores assessed by Drs. Tadavarthy and Crosson

Plaintiff asserts that the ALJ did not adequately explain her decision to accord little weight to the GAF score assessed by Drs. Tadavarthy and Crosson.  (Doc. 12 p. 22).  Further, she argues that the GAF score assigned by Dr. Tadavarthy should be accorded significant, if not controlling, weight because it is consistent with the GAF score assigned by non-treating

examiner, Dr. Crosson.  (*Id.*).  In weighing the probative value of GAF scores, courts have noted

that:

> A GAF score is a "numerical summary of a clinician's judgment of [an]
> individual's overall level of functioning ..." *See* DSM-IV-TR at 32.  Under the
> Social Security Administration rules, a GAF score is not considered to have a
> "direct correlation to the severity requirements." 65 Fed.Reg. 50746, 50764-65
> (Aug. 21, 2000).  Nevertheless, the GAF scale constitutes acceptable and reliable
> medical evidence.  *See id*; *Colon v. Barnhart*, 424 F.Supp.2d 805, 812 (E.D.Pa.
> 2006)(Although a claimant's GAF score does not have a "'direct correlation to the
> severity requirements,' ... [the GAF score] remains the scale used by mental
> health professionals to 'assess current treatment needs and provide a prognosis.'
> [Therefore, the GAF score is] medical evidence ... and must be addressed in
> making a determination regarding a claimant's disability.")(*quoting* 65 Fed.Reg.
> 50764-65)); *Dougherty v. Barnhart*, No. 05-5383, 2006 WL 2433792, at *9
> (E.D.Pa. Aug 21, 2006).

*Rivera v. Astrue*, No. 12-CV-6622, 2014 WL 1281136 *7(E.D.Pa. Mar. 27, 2014).

On September 1, 2009, Plaintiff was seen by Dr. Tadavarthy for a psychiatric evaluation.

(TR 610-13).  Plaintiff denied experiencing any auditory or visual hallucinations, but did report

some difficulty concentrating.  (*Id.*).  On examination, Dr. Tadavarthy noted that Plaintiff was

alert, fully oriented, and appropriately dressed and groomed, but presented with a "depressed"

and "constricted" affect.  (*Id.*).  Dr. Tadavarthy found Plaintiff's intelligence to be average, her

five minute recall was 3/3, and Plaintiff's insight and judgment were "good."  (*Id.*).  Dr.

Tadavarthy reported the diagnostic impression of Bipolar disorder (not other wise specified),

post-traumatic stress disorder (chronic), and panic disorder with agoraphobia and assigned

Plaintiff a GAF score of 45.[4]  (*Id.*).

---

[4]A GAF score of 41-50 indicates serious symptoms or any serious impairment in
social, occupational, or school functioning.  *Diagnostic and Statistical Manual of Mental
Disorders* 32-35 (4th ed. text. rev. 2000).

During an April 2011 consultative exam, Plaintiff was evaluated by Dr. Crosson.  (TR 617-22).  Dr. Crosson diagnosed Plaintiff with Bipolar II Disorder, and assessed a GAF score of 45.  (TR 621).  Dr. Crosson opined that Plaintiff's condition was apt to improve with the continuation of psychotherapy and medication, but noted that improvement would likely occur after an extensive period of treatment.  (Id.).  Following the examination, Dr. Crosson completed a check-box assessment on which she found that Plaintiff had: marked limitations in her abilities to interact with the public, supervisors, and coworkers, and respond appropriately to work pressures and changes in routine; moderate limitations in her ability to make simple, work-related decisions; and slight limitations in her abilities to understand, remember, and carry out short or detailed instructions.  (TR 623-24).

The ALJ accorded "some weight" to the psychiatric opinions of Drs. Tadavarthy and Crosson, but discounted the GAF score of 45 assessed by each doctor because they were inconsistent with Plaintiff's self-reported activities of daily living.  (TR 20).  The ALJ also accorded "little weight" to Dr. Crosson's medical source statement because Dr. Crosson's observations related to Plaintiff's inability to get along with others and cope with stress and changes in the workplace were unsupported by the medical evidence of record.  (Id.).

Plaintiff contends that the ALJ failed to specifically identify those activities of daily living which were inconsistent with the GAF scores of 45 assessed by Drs. Tadavarthy and Crossen.  Earlier in her decision, however, the ALJ noted that Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  She is able to care for her children and attend college classes.  The [Plaintiff] testified that she has traveled as far as West Virginia to work as an exotic dancer."  (TR 19).

-17-

Thus, we find that the ALJ clearly identified the activities of daily living which she found to be inconsistent with the GAF scores.  Accordingly, we find that the ALJ adequately explained her decision to discount the GAF scores assessed by Drs. Tadavarthy and Crosson, and that her decision is supported by substantial evidence.

### 3. The ALJ did not err in her failure to discuss the GAF scores assessed by LCSW Tilley

Plaintiff's treatment records from Lawrence Counseling reflect that she met with LCSW Tilley ten times between August 2009 and  December 2009.  (TR 594-603).  On August 27, 2009, after her first session with LCSW Tilley, the social worker assigned Plaintiff a GAF score of 60.[5]  (TR 596).  On October 1, 2009, LCSW assigned Plaintiff a GAF score of 54.  (TR 598). The ALJ did not address the probative weight GAF scores assessed by LCSW Tilley in her decision.  Plaintiff contends that, as a treating medical source, the GAF scores reported by LCSW Tilley are entitled to significant weight, and that the ALJ's failure to address these GAF scores in her decision is reversible error.  (Doc. 12 pp. 22-23).

Though it is well-established that an ALJ must consider all relevant evidence in the record, *Burnett*, 220 F.3d at 121, "[t]here is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F.Appx. 130, 133 (3d Cir. 2004).  An ALJ is not required to address each statement in the record when "[o]verwhelming evidence in the record discounted its probative value, rendering it irrelevant." *Johnson*, 529 F.3d at 204. The ALJ must only articulate "at some minimal level her analysis of a particular line

---

[5]A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32-35 (4th ed. text. rev. 2000).

of evidence." *Phillips v. Barnhart*, 91 F.Appx. 775, 780 n. 7 (3d Cir. 2004).  Thus, an "ALJ's failure to cite specific evidence does not establish that the ALJ failed to consider it." *Id.*

Here, the case record shows that Plaintiff received four GAF scores assessed by three different medical sources.  Plaintiff is correct that the ALJ did not mention the GAF scores assessed by LCSW Tilley in her decision.  Although it has issued three non-precedential opinions, the Third Circuit has yet to address the issue of whether an ALJ's failure to discuss numerous GAF scores requires remand.  *See Rios v. Comm. of Soc. Sec.*, 444 F.Appx. 532 (3d Cir. 2011); *Gilroy v. Astrue*, 351 F.Appx. 714 (3d Cir. 2009); *Irizarry v. Barnhart*, 233 F.Appx. 189 (3d Cir. 2007).  However, several District Courts in this Circuit have repeatedly held that an ALJ's failure to specifically address a GAF score that supported a finding of serious impairments in social or occupational functioning is cause for remand.  *See* Green v. Colvin, No. 3:12-CV-1575, 2014 WL 281933 *7 (M.D.Pa. Jan 24, 2014)(holding that a decision was unsupported by substantial evidence where the ALJ failed to address a Plaintiff's GAF scores ranging from 30 to 50); *Sweeny v. Comm. of Soc. Sec.*, 847 F.Supp.2d 797, 805 (W.D.Pa. 2012); *Colon v. Barnhart*,  424 F.Supp.2d 805, 813 (E.D.Pa. 2006)(finding that in case where the Plaintiff received 12 GAF scores the ALJ, who addressed Plaintiff's higher scores of 60 and 65, erred by failing to discuss a Plaintiff's two lowest GAF scores of 50); *See also Stefanak v. Comm. of Soc. Sec.*, No. 08-CV-1432, 2010 WL 430024 *3(W.D.Pa. Feb. 5, 2010)(finding that the ALJ did not err in failing to address a GAF score of 55, in part, because it was indicative of moderate symptoms this would not support a finding of disability).  However, courts have also recognized that, while GAF scores can indicate an individual's capacity to work, they also correspond to unrelated factors. *Coy v. Astrue*, 2009 WL 2043491 *14 (W.D.Pa. 2009)(*citing*

*Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. 2008)). Furthermore, where the medical source failed to provide an explanation as to the specific limitations that form the basis of a particular GAF score, a court cannot be expected to provide a specific assessment. *See Gilroy*, 351 F.Appx. At 716 (finding that the ALJ did not err by failing to address a GAF score of 45 where the Dr. Did not to express any opinions or otherwise explain the basis of his GAF assessment).

This case is clearly distinguishable from those requiring remand for failure to address a GAF score as the GAF scores left unaddressed in this case were indicative of only moderate, rather than severe, impairments.  Furthermore, this is clearly not a case where the ALJ merely cherry picked certain GAF scores which supported her conclusion.  In fact, the ALJ explicitly recognized, and properly discounted, the two GAF scores below 50 that were most antagonistic to her findings.  As such, we find that the ALJ did not err in her failure to discuss the GAF scores assessed by LCSW Tilley, as their probative value is diminished by the lack of explanation for her findings, and ALJ's discussion of the more adverse GAF scores assessed by Drs. Tadavarthy and Crosson.

### 4.   The ALJ did not err in her failure to discuss the May 2010 opinion by the Edgewater PA-C

In October 2009, Plaintiff was examined by the Edgewater PA-C, and reported auditory hallucinations; the PA-C adjusted Plaintiff's medications. (TR 608). In November 2009, Plaintiff was re-examined by the Edgewater PA-C. (TR. 607).  Plaintiff reported that the medication adjustment did not eliminate her auditory hallucinations, but reported decreased symptoms of depression and anxiety; the PA-C re-adjusted Plaintiff's medications.  (*Id.*).  In January 2010, Plaintiff returned to the Edgewater PA-C.  She denied that her symptoms improved, but did not

report any hallucinations.  (TR 696).  Plaintiff also denied any hallucinations during examinations in February and March of 2010.  (TR 694-95).

On May 27, 2010, during an examination with the Edgewater PA-C, Plaintiff, once again, complained of auditory hallucinations.  (TR 693).  The Edgewater PA-C noted that Plaintiff was not able to work due to her "intrusive auditory hallucinations."  (*Id.*).  On July 15, 2010, and August 12, 2010, Plaintiff continued to report auditory hallucinations and insomnia.  (TR 691-92).

In November and December 2010, Plaintiff's treatment notes reflected some improvement.  She reported no auditory hallucinations.  (TR 689-90).  Moreover, during her December appointment, Plaintiff stated that she planned to return to college.  (TR 689).  In March 2011, Plaintiff reported "occasional" auditory hallucinations, but was able to manage her symptoms using a focusing technique.  (TR 738).  In April 2011, Plaintiff reported some stress due to her college course work, but was sleeping better and did not report any auditory hallucinations.  (TR 737).  In May 2011, Plaintiff reported some auditory hallucinations, but was otherwise normal except for some anxiety and depression following the recent death of her grandmother.  (TR 736).  In June 2011, Plaintiff did not complain of any symptoms, and reported that her medications were effective.  (TR 735).

Plaintiff argues that the ALJ erred by failing to mention, and accord adequate weight to, the treatment notes by the Edgewater PA-C, which contain the PA-C's May 2010 statement that Plaintiff was not able to work "at that time" due to her intrusive hallucinations.  (TR 693).  We find that Plaintiff's assertion is without merit.  As discussed above, the ALJ is under no obligation to cite to every statement in the record, especially where the overwhelming evidence of record

discounts the probative value of a particular statement.  Here, the probative value of the Edgewater PA-C's May 2010 statement was overwhelmed by subsequent treatment records from the same source, establishing that Plaintiff's condition steadily improved over the next few months.  Accordingly, we find that the ALJ adequately considered the relevant portions of the treatment records from Edgewater  Psychiatric Center  in her decision.

### B.     The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Next, Plaintiff argues that the ALJ failed to accord proper weight to her subjective testimony regarding the persistence, frequency, and intensity of her symptoms.  (Doc. 12 pp. 26-27).  Plaintiff asserts that her testimony regarding the intensity and unpredictability of her symptoms is entirely consistent with the medical opinions of Drs. Tadavarthy, Miller, and Crosson, and the Edgewater PA-C.  In response, the Commissioner asserts that ALJ properly found Plaintiff's subjective testimony regarding the functional impact of her symptoms to be only partially credible.  (Doc. 15 pp. 25-27).

Where a disability determination turns on an assessment of a Plaintiff's subjective report of his or her symptoms, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. §§ 404.1529, 416.929.  Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Hartranft*, 181 F.3d at 362. Cases involving an assessment of a Plaintiff's subjective reports of symptoms "obviously [require]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id.*

In making this assessment, the ALJ is guided both by statute and by regulations. This

guidance eschews wholly subjective assessments of a Plaintiff's symptoms.   The ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence  . . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a Plaintiff's subjective complaints are to be considered.  20 C.F.R. §§ 404.1529, 416.929.  Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a Plaintiff's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. §§ 404.1529(b), 416.929(b).  Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work.  *Id.*  In so doing, the medical evidence of record is considered along with the claimant's statements. *Id.*  Social Security Ruling (SSR) 96-7p gives the following instructions in evaluating the credibility of the Plaintiff's statements regarding his symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their

functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p. Additionally, SSR 96-4p provides that:

> Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s).

SSR 96-4p.

In discounting Plaintiff's subjective testimony, the ALJ observed that Plaintiff described daily activities of daily living which were not limited to the extent expected given Plaintiff's complaints. (TR 19-20). The ALJ noted that Plaintiff could care for her children, attend college classes, and was able to travel. (*Id.*). Further, the ALJ noted that Plaintiff was prescribe medications for her impairments which have been largely effective in controlling her symptoms. (*Id.*). Accordingly, I find that the ALJ's credibility determination is supported by substantial evidence.

## C.    The ALJ's RFC Assessment is Unsupported by Substantial Evidence

Last, Plaintiff argues, in the alternative, the ALJ's decision is unsupported by substantial evidence because she failed to include all of Plaintiff's credibly established limitations in her RFC assessment. (Doc. 12 pp. 24-26). Specifically, Plaintiff alleges that the ALJ failed to account for any limitations in maintaining concentration, persistence, or pace, sustaining regular attendance, or the functional impact of her reported auditory hallucinations. (*Id.*). The

Commissioner responds that the ALJ adequately accounted for all of Plaintiff's credibly established limitations in her decision.  (Doc. 15 pp. 23-25).

Residual functional capacity reflects "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121(citations omitted). The RFC reflects "the most [a Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).  In making this determination, "the ALJ must consider all evidence before [her]." *Burnett*, 220 F.3d at 121.  "Although the impairment must be medically determinable, it need not be a 'severe' impairment to be considered in the RFC assessment." *Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 7 (3d Cir. 2005)(*citing* 20 C.F.R. § 416.945(a)(2)); *see also* 20 C.F.R. § 404.1545(a)(2).  An ALJ's RFC assessment must include those limitations which she finds to be credible. *See Burnett*, 220 F.3d at 121; *see also Hartranft*, 181 F.3d at 362.  Thus, to the extent that an ALJ finds some of a Plaintiff's limitations less than credible, she may properly exclude them from her RFC assessment. *See e.g. Salles v. Comm. of Soc. Sec.*, 229 Fed.Appx. 140, 147 (3d Cir. 2007).

With respect to the evaluation of mental limitations, SSR 96-8p cautions us that the evaluation of limitations in the four major functional areas, or "B" criteria, in steps two and three of the sequential evaluation process is not an RFC assessment.  The ruling states that an ALJ's mental RFC assessment, used in steps four and five of the sequential evaluation process, requires a more detailed assessment of the various functions contained in the broad categories summarized by the PRT form.  SSR 96-8p.

Here, the ALJ determined at step three of the sequential evaluation process that Plaintiff had the following functional limitations: (1) a mild restriction in activities of daily living; (2)

moderate difficulties in social functioning; (3) moderate difficulties in concentration, persistence, or pace; and (4) no episodes of decompensation.  (TR 15-16).

In finding that Plaintiff was moderately limited in the area of concentration, persistence, or pace, the ALJ stated that:

> [Plaintiff] alleges difficulty concentrating and motivating herself to perform chores and errands.  She reports difficulty following directions and completing tasks. The [Plaintiff] alleges that she needs reminders to take her medications.  She reports handling stress and changes in routine poorly.  However, she is able to help her oldest child with homework.  The [Plaintiff] also resumed college courses towards a medical assistant degree in 2011.  She does not need reminders to take care of her personal grooming needs.  Her hobbies include reading, writing, poetry, watching television, and playing with her children.

(TR 16)(internal citations omitted).  The ALJ noted that her RFC assessment reflected the degree of limitation she found in the "paragraph B" mental function analysis.  (TR 16).  Thus, the ALJ clearly found that Plaintiff had some credibly established limitation in her ability to maintain concentration, persistence, or pace.[6]

In her RFC assessment, the ALJ noted that the state agency reviewing psychologist, Dr. Hoffman, assessed that Plaintiff had moderate limitations in concentration, persistence, or pace. (TR 19).  The ALJ also observed that Dr. Hoffman found that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, and carry out detailed

---

[6]The Commissioner contends that Dr. Hoffman found that Plaintiff was not limited in the area of pace, thus Plaintiff's argument with respect to any failure to address a limitation in the area of pace is meritless. While we note that the Commissioner is accurate in her observation that Dr. Hoffman did not find any limitation in the area of pace on her mental RFC assessment, the ALJ's decision is ambiguous as to what portions of Dr. Hoffman's assessment she credited.  The ALJ's step three finding that Plaintiff was moderately limited in maintaining concentration, persistence, or pace appears to be based entirely on Plaintiff's recitation of her own subjective complaints, as stated in a function report, rather than on any medical evidence of record.

instructions.  (*Id*.). However, the ALJ's RFC assessment only addressed "moderate limitations in using decision making and judgment, adjusting to work setting changes, and interacting with supervisors, co-workers and the public."  (TR 17). Thus no discernable limitation in the area of maintaining concentration, persistence, or pace was incorporated within this assessment, nor did the ALJ offer any explanation for its exclusion.  Further, because the ALJ failed to address any limitation to Plaintiff's ability to maintain concentration, persistence, or pace in her RFC assessment, these limitations were not relayed to the VE through a properly formulated hypothetical question. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.").   Accordingly, having found that ALJ failed to give adequate consideration to this, and other limitations, including the functional impact of Plaintiff's auditory hallucinations, we find that the ALJ's decision is unsupported by substantial evidence, and recommend that this case be remanded.

## VI.    RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that the final decision of the

Commissioner of Social Security denying Plaintiff's claims for DIB and SSI be **VACATED**, and

**REMANDED** to the Commissioner for further proceedings consistent with this Report.


  s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: April 17,  2014**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANTELLET BROOKS, | : | CIVIL NO: **3:CV-13-00937** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 17, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_____Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 17, 2014**